```
JAMES H. HOLLOWAY,            )
                              )
       Plaintiff,             )
                              )
       v.                     )    NO. 3:07-0009
                              )
BRIDGESTONE FIRESTONE NORTH   )    Judge Trauger/Bryant
AMERICAN TIRE, LLC,           )    Jury Demand
                              )
       Defendant.             )
```

**TO: The Honorable Aleta A. Trauger**

## REPORT AND RECOMMENDATION

This case was referred to the Magistrate Judge for case management and report and recommendation on dispositive motions (Docket Entry No. 3).

Pending before the Court is defendant's Motion for Summary Judgment (Docket Entry No. 24), to which plaintiff has filed a memorandum in opposition (Docket Entry No. 30).

For the reasons stated below, the undersigned Magistrate Judge **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and that the complaint be **DISMISSED** with prejudice.

### I. Summary of Relevant Facts

Plaintiff James H. Holloway, an African-American, has filed this action alleging employment discrimination based upon race pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981 (Docket Entry Nos. 1 and 18). Plaintiff alleges that his employment at defendant

Bridgestone Firestone North American Tire, LLC ("Bridgestone") was wrongfully terminated on November 21, 2005. Defendant has denied liability (Docket Entry No. 21).

From the record before the Court, it appears that the following facts are undisputed. Plaintiff was hired as a tire builder at Bridgestone's tire manufacturing plant in LaVergne, Tennessee in April 2005. Consistent with the practice for all newly hired employees and the terms of the collective bargaining agreement between Bridgestone and the union, plaintiff was subjected to a 180-day probationary period within which new tire builders are to learn their job and increase their proficiency in order to achieve certain production and efficiency standards.[1] Production standards for passenger tire builders, such as plaintiff, have been established based upon time studies by Bridgestone and the union, and typically range from the low 200s to the low 300s tires per 12-hour shift. Tire builders are also evaluated in terms of their "effectiveness" or "efficiency," which is a calculated percentage that gives an employee credit for "downtime" delays of more than 6 minutes during the shift. Effectiveness, or efficiency, is designed to measure a tire builder's productivity while his machine is actually running.

---

[1]During the 180-day probationary period, a newly hired tire builder is considered an "at-will" employee. However, if a newly hired employee completes the probationary period without being discharged, he or she becomes a full seniority employee under the collective bargaining agreement and may be terminated only for "just cause."

For new tire builders, production and effectiveness expectations initially are low. However, with increasing experience, passenger tire builders by the end of their 180-day probationary period are expected consistently to build at or near the expected number of tires per shift and maintain an effectiveness percentage at or near 100 percent. Bridgestone maintains detailed records of the number of tires built and also the calculated "effectiveness" or "efficiency" percentage of each tire builder for each 12-hour shift.

Plaintiff's probationary period began on April 6, 2005, and was scheduled to end on October 3, 2005. Plaintiff's initial performance was satisfactory for a new tire builder, but as he gained experience his performance did not improve as quickly or as significantly as expected. Plaintiff achieved a 90 percent effectiveness for the first time on September 25, only three shifts before the scheduled end of his probationary period. Similarly, plaintiff's per-shift tire production performance was inconsistent. By the end of his scheduled probationary period, neither plaintiff's per-shift tire production nor his efficiency percentage satisfied Bridgestone's standards for a new tire builder. Nevertheless, because plaintiff had shown a positive attitude and effort, Bridgestone elected to extend plaintiff's probationary period until November 29, 2005, in order to give him an added opportunity to improve his performance. Although plaintiff's

3

performance showed some improvement just before and just after his probationary period was extended, he never achieved the sustained level of performance expected of a tire builder with the amount of experience that he had by then accumulated.

By mid-November, with the end of plaintiff's extended probationary period approaching, Bridgestone needed to take action on plaintiff's employment. Upon review, plaintiff's production records failed to demonstrate the improvement and consistency of performance that would indicate a likelihood of long-term success as a tire builder. Bridgestone terminated plaintiff's employment on November 21, 2005, for the stated reason of low production performance.

Plaintiff alleges that Bridgestone wrongfully terminated his employment based upon his race. Bridgestone denies this claim.

## II. **Standard of Review**

To grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits on file, establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact.

4

Celotrex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Thus, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The nonmoving party must thereafter produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Although a plaintiff is entitled to a review of the evidence in the light most favorable to him, the nonmoving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### III. Analysis

To establish a *prima facie* case of race discrimination, a plaintiff must show that he (1) was a member of a protected class, (2) was qualified for the position, (3) was discharged, and (4) that he was replaced by a person outside of the protected class, or that similarly situated nonprotected employees were treated more favorably. Talley v. Bravo Pitino Rest. Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995). Once the plaintiff has established a *prima facie* case, which creates a presumption that the defendant unlawfully discriminated against the plaintiff, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the plaintiff's rejection. Texas Dep't of Community

5

Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). If the defendant offers a legitimate reason, the burden shifts back to the plaintiff to demonstrate that unlawful discrimination was a determinative factor in his termination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-05 (1973).

In this case, Bridgestone asserts that, after extending plaintiff's probationary period to afford him added opportunity to demonstrate satisfactory performance, it terminated plaintiff's employment because he failed to demonstrate the improvement and consistency of performance that would indicate a likelihood of long-term success as a tire-builder. (Pierce declaration, Docket Entry No. 27-4, at paragraph 27). Bridgestone argues that plaintiff fails as a matter of law to establish a *prima facie* case because he cannot show (1) that he was qualified for the tire builder position or (2) that similarly situated nonprotected employees were treated more favorably. (Defendant's Memorandum in Support, Docket Entry No. 25, pp. 9-13). Bridgestone maintains that detailed records of plaintiff's tire production during his extended probationary period show that plaintiff never demonstrated consistency in achieving total per-shift tire production or "effectiveness" percentages sufficient to meet Bridgestone standards for new tire builders, and, therefore, that plaintiff was not "qualified" for the position. In addition, Bridgestone asserts that plaintiff cannot show that a nonprotected employee was treated

6

more favorably because Darla Tuch, a white employee who trained as a tire builder along with plaintiff, was also terminated for unsatisfactory production, despite production numbers and effectiveness percentages superior to those of plaintiff.

In response to Bridgestone's motion, plaintiff does not challenge the accuracy of his production records nor those of his fellow trainees. Instead, plaintiff asserts that he "was not provided help the same as his white counterparts; he was put on a machine that was problematic while white employees were allowed to qualify on machines that were not problematic; white employees were doubled up with others so that they could have a better rate of production" and that "Ms. Tuch, and other white employees similarly situated, were given much more of an opportunity to succeed than Mr. Holloway." (Plaintiff's Memorandum in Opposition, Docket Entry No. 30, pp. 3-4).

In order to satisfy the second element – that he was "qualified" for the position – of the four-part *prima facie* case threshold, a plaintiff must demonstrate that he was meeting his employer's legitimate expectations and was performing to his employer's satisfaction. <u>Warfield v. Lebanon Correctional Inst.</u>, 181 F.3d 723, 729 (6th Cir. 1999); <u>Ang v Procter & Gamble Co.</u>, 932 F.2d 540, 549 (6th Cir. 1991). Moreover, if a plaintiff was not doing what his employer wanted him to do, he does not raise an issue of fact on the question of the quality of his work merely by

7

challenging the judgment of his employer. Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir. 1980), cert. denied, 450 U.S. 959 (1981). Plaintiff conceded at his deposition that, had Bridgestone not extended his probationary period, he would have been terminated because he was not producing what Bridgestone said he should have been producing, and that his efficiency and tire production "wasn't up to par at the time." (Plaintiff's deposition, Docket Entry No. 27-2, pp. 76, 82). In fact, the graphic representation of plaintiff's production records, attached as Exhibit 2 to the declaration of Donice Pierce, shows that plaintiff's work, even during his extended probationary period, consistently failed to meet Bridgestone's expected standards, both in terms of actual tires built per shift and effectiveness percentage. (Docket Entry No. 27-6). From the undisputed evidence, the undersigned Magistrate Judge finds that plaintiff has failed to demonstrate that he was qualified for the position of tire builder.

Plaintiff further asserts that white employees received more favorable treatment than he did. Specifically, plaintiff claimed in his deposition that Darla Tuch and Brad Hoagland, both white, received "more attention" and more help during their probationary periods. (Plaintiff's deposition, Docket Entry No. 27-2, pp. 56, 140). Plaintiff, however, did not monitor Hoagland's performance, but considered him an "average" tire builder, but

8

better than Darla Tuch. (Id. at 75-76). Plaintiff concedes that Hoagland "got better than I was." (Id. at 140). In fact, based upon undisputed production records, Darla Tuch's tire production and effectiveness percentages regularly exceeded the plaintiff's. (Docket Entry Nos. 27-6 and 27-7). Nevertheless, Darla Tuch's employment was terminated by Bridgestone on the day after plaintiff's termination for the same stated reason – low production performance. (Pierce declaration, Docket Entry No. 27-4, paras. 11 and 12). Therefore, by plaintiff's own testimony, Brad Hoagland's production performance "got better than [plaintiff's]," and Darla Tuch, the only white employee whom plaintiff names as similarly situated, was terminated one day after he was for the same stated reason. On these facts, the undersigned Magistrate Judge finds that plaintiff has failed to satisfy the fourth element of a *prima facie* case – that a similarly situated nonprotected employee was treated more favorably.

Plaintiff's assertions that Tuch and Hoagland received more "attention" and "help" than he did are based merely on plaintiff's conclusory allegations and subjective beliefs, and cannot preclude summary judgment. See Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992). Plaintiff offers no quantitative evidence to support these beliefs. Similarly, his claim that he was assigned to inferior, problematic machines is supported by nothing other than his subjective claims. To the contrary, a

9

comparison of the respective production records indicates that Darla Tuch's production exceeded plaintiff's, regardless of the machines to which they were assigned. (Bridgestone Memorandum in Support, Docket Entry No. 25, pp. 16-17).

Finally, plaintiff is unable to create a genuine issue of material fact regarding the claim that Bridgestone's stated reason for terminating his employment – low production performance – was pretextual. The undisputed production records demonstrate that, even after Bridgestone extended plaintiff's probationary period to give him an additional opportunity to improve, plaintiff's production consistently failed to meet Bridgestone's standards for actual tire production and efficiency. Upon this undisputed evidence, the undersigned Magistrate Judge finds that plaintiff has failed to raise a genuine issue of material fact for trial, and therefore that summary judgment is appropriate.

## RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and that the complaint, as amended, be **DISMISSED** with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said

objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986).

    **ENTERED** this 14th day of November 2007.

<u>s/ John S. Bryant</u>
JOHN S. BRYANT
United States Magistrate Judge